IN THE UNITED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF OHIO
EASTERN DIVISION

| TSDC, LLC | CASE NO. 1:14-cv-02699-CAB |
|---|---|
| v. | |
| Antoinette Galvan, et al | JUDGE: DONALD C. NUGENT |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION**
**TO DEFENDANTS' <u>MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

Plaintiff TSDC, LLC, through undersigned counsel, respectfully submits this opposition to Defendants' Motion for Judgment on the Pleadings ("Defs.' Mot.").

## Introduction

Defendants' nearly seven year track record of ominous behavior toward and against Plaintiff has brought us now to their most recent imprudent act – a Motion for Judgment on the Pleadings that is completely without merit. Plaintiff will demonstrate in this opposition that Defendants' motion is based, not on law, but on self-serving arguments they have molded to fit nicely into their tunnel-vision view of the facts. Defendants' core arguments are that Plaintiff's claims either 1. Arise from Defendants' actions prior to dismissal of Plaintiff's original lawsuit or that 2. The parties' settlement agreement authorizes Defendants to forever use Plaintiff's trademarks in any way they wish. Their first argument is simply untrue, and their second argument is preposterous. Not a single claim raised in Plaintiff's complaint is based on Defendants' pre-dismissal actions, and the parties' settlement agreement absolutely does not release Defendants to use Plaintiff's marks carte blanche. In fact, the agreement explicitly prohibits Defendants from using FIGHT LIKE A GIRL as a trademark or as an indicator of

1

source. For those reasons, fully supported herein, Defendants' motion for judgment on the pleadings should be wholly denied.

## Law

The standard of review applicable to a motion for judgment on the pleadings under Fed. R. Civ. Proc. 12(c) is the same as a motion to dismiss under Rule 12(b)(6). *Mixon v. Ohio*, 193 F.3d 389, 399-400 (6th Cir. 1999). When a motion for judgment on the pleadings is filed, "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008), quoting *JP Morgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). When ruling on a defendant's motion to dismiss, the court must accept as true all of the allegations contained in a complaint and "then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1040 (U.S. 2009).

As the U.S. Supreme Court held, to survive dismissal, the non-moving party "must allege facts that, if accepted as true, are sufficient 'to raise a right to relief above the speculative level' and must state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 554, 555 (U.S. 2007). *Twombly* does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. And under *Twombly*'s construction of Rule 8 of the Federal Rules of Civil Procedure, "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft* at 1949. Finally, the Sixth Circuit has held that "In reviewing a motion to dismiss, we construe the complaint in the

light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

Under this standard, TSDC has pled sufficient facts from which the Court can infer that Defendants breached multiple terms of the parties' settlement agreement including the plainly worded prohibition barring them from using Plaintiff's trademarks as an indicator of source.

### **Plaintiff Did Not Plead Claims Based on Defendants' Pre-Dismissal Actions**

Defendants argue that Plaintiff's complaint includes claims based on actions that gave rise to its original complaint, which as they state, was dismissed with prejudice in 2011. To substantiate their position, they assert that "…numerous pages and paragraphs of TSDC's complaint expressly refer to conduct alleged to have occurred prior to the dismissal of TSDC's complaint." (Defs.' Mot. § III, document #10) Defendants argument would be compelling - if it was accurate.

Plaintiff did not plead claims based on any conduct whatsoever of Defendants that occurred prior to the original complaint's dismissal. Defendants should re-read Plaintiff's complaint, specifically, the paragraph preceding the "numerous pages and paragraphs" they reference in their motion. To revisit that paragraph:

> "The bad faith behavior of Defendants is a central element of Plaintiff's complaint in that it encapsulates each and every claim contained herein. In order for the court to fully apprehend Plaintiff's grievances, it is critical to reveal at least a summary of the nearly seven year pattern of bad faith that gives rise to the instant lawsuit, illuminates Plaintiff's claims, and exposes Defendants' utter disregard of the law."(Complaint § 49, document #1).

Thus, as clearly pointed out, Plaintiff provides a summary of Defendants' past conduct to provide the Court with a glimpse of the harassing and vindictive behavior that Plaintiff has been subjected to for years and that "gives rise to" or "leads up to" the present lawsuit; not to the

3

claims, but to the lawsuit, in general. Plaintiff goes on to state additional reasons for including this past conduct, namely, to "illuminate Plaintiff's claims" which means to "shed light on" Plaintiff's claims and to "expose Defendants' utter disregard of the law", which speaks for itself.

Moreover, this section's title itself, "DEFENDANTS' INFRINGEMENT AND BAD FAITH PRIOR TO SETTLEMENT", should put the reader on notice that the content of the subsequent section is to provide a factual background of Defendants' prior behavior. Nowhere does the complaint tie this section to any of Plaintiff's present claims.

### **Defendants' Res Judicata Defense is Improperly Asserted**

Plaintiff's present claims are based entirely on conduct that occurred after dismissal of its original complaint thus the doctrine of res judicata is not relevant in this case. A claim is not barred by res judicata if its cause of action arises "from entirely separate and discrete events and wrongful acts by the defendant." *Rawe v. Liberty Mutual Fire Ins. Co*., 462 F.3d 529 (6th Cir. 2006) as it does here. Defendants appear to believe that Plaintiff released them from their "actions", namely, their infringing of Plaintiff's marks. It did not. It released them from any "claims" it could have brought under the specific actions that gave rise to that original lawsuit. This fact is cemented not just by correct interpretation of the doctrine of res judicata, but by the multiple prohibitions in the parties' settlement agreement.

Defendants correctly recite the four elements required for a finding of res judicata. The issue is that res judicata simply does not apply in this case.

For res judicata to apply, four elements must exist:

1. A final decision on the merits by a court of competent jurisdiction;
2. A subsequent action between the same parties or their privies;

3. An issue in the subsequent action which was litigated or which should have been litigated in the prior action; and

4. An identity of the causes of action.

*Kane v. Magna Mixer Co*., 71 F.3d 555, 560 (6th Cir. 1995). The final two elements are often addressed together. See *Hivner v. Active Electric, Inc*., 878 F. Supp. 2d 897 (S.D. Ohio 2012).

Defendants state that "every claim that refers to activity or issues identified in the prior suit dismissed in 2011 should be barred by the doctrine of res judicata". (Defs.' Mot. III, document #10). The flaw with Defendants' argument here lies in their misunderstanding of elements three and four.

Element three states that a subsequent action must be one that "was litigated or should have been litigated in the prior action". Using Defendants' rationale, Plaintiff would have to possess psychic abilities to determine that Defendants never intended to keep their written promises. To have litigated Defendants' conduct that occurred after execution of the settlement agreement would have been impossible. Plaintiff had no way to predict that:

1. Defendants would choose to use Fight Like a Girl branded logos to identify their Fight Like a Girl "line"

2. Defendants would regularly refer to their Fight Like a Girl products as a 'collection' or 'line'

3. Defendants would make a video advertising their Fight Like a Girl "line"

4. Defendants would provide support services under the FIGHT LIKE A GIRL mark

5. Defendants would insert a small version of their Fight Like a Girl branded logo into each and every one of their millions of Fight Like a Girl product descriptions with a link back to their website that hosts their infringing Fight Like a Girl "collection"
6. Defendants would commit new copyright infringement by copying at least four of Plaintiff's copyrighted works
7. Defendants would continue to add Plaintiff's copyrighted designs that were on *products* that Plaintiff released in the settlement agreement to thousands of *new* products as if copyright had been transferred to them

None of these infringing actions could have possibly been litigated during the pendency of the first complaint because Defendants had not committed them yet. Moreover, Defendants promised through their signatures that they would *not* commit them, which under ordinary circumstances involving reasonable people, should have been an assurance to Plaintiff that Defendants would refrain from such acts.

Nonetheless, Defendants chose to continue infringing Plaintiff's marks after dismissal of the original complaint, and it is that post-dismissal conduct that brings us to the instant lawsuit. The Sixth Circuit upholds Plaintiff's position on the third element of res judicata. "We agree that Rawe's first-party bad-faith claims that are based upon Liberty Mutual's actions after she filed the first lawsuit to enforce the UIM contract cannot be barred by res judicata, because those alleged actions had not yet occurred at the time she filed the first UIM suit. The district court's dismissal of these claims on res judicata grounds was erroneous. Simply put, [Plaintiff] could not have asserted a claim that [she] did not have at the time" and "Rawe's previous suit…does not prospectively immunize the defendant from liability for future actionable conduct for bad faith." *Rawe* at 521. The U.S. Supreme Court has held the same, "We believe, however, that the court

erred in concluding that the 1942 and 1949 suits were based on the same cause of action. […] While the 1943 judgment precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case." *Lawlor v. National Screen Service Corporation,* 349 U.S. 328 (U.S. 1955).

The fourth and final element under which res judicata can bar a claim is "an identity of causes of action". Here, Defendants completely ignore the word "identity". Identity in law means "sameness". Identity of causes of action means an "identity of the facts creating the right of action and of the evidence necessary to sustain each action." *Sanders Confectionary Products, Inc. v. Heller Financial, Inc*., 973 F.2d 484 (6th Cir. 1992).

The Supreme Court of Ohio held, "[T]o constitute a bar, there must be identity not only of subject matter but also of cause of action. In other words, a judgment in a former action does not bar a subsequent action where the cause of action prosecuted is not the same, even though each action *relates to the same subject matter*." (emphasis added) *Norwood v. McDonald*, 52 N.E.2d at 71 (Ohio 1943).

Defendants assert that the 2011 complaint and the present case involve the same cause of action merely because both give rise to the same legal claims. However, it is well established that for res judicata purposes, "a "cause of action" is defined by the factual, not the legal basis for the claim. Cases involve the "same cause of action" only when they arise from the same nucleus of operative facts – i.e. the same events. *Forry, Inc. v. Neundorfer, Inc*., 837 F.2d 259, 265 (6th Cir. 1988); accord, *Maharaj v. Bankamerica Corp*., 128 F.3d 94, 97 (2d Cir. 1997). Where the facts necessary to the later action differ from those of the prior action, there is no identity of the "cause of action." *Duncan v. Peck*, 752 F.2d 1135, 1140 (6th Cir. 1985).

Finally, where, as here, when the same course of conduct continues after judgment in a prior action, the party may bring a new action based on the continuing violation. *Cellar Door Prod. Inc. v. Kay*, 897 F.2d 1375, 1376-78 (6th Cir. 1990). In *Cellar*, the Sixth Circuit clearly holds that the subject matter, or "issue", of a second complaint can be the same as that of the first complaint as long as the specific "actions" giving rise to the second complaint occurred *after* the first complaint's dismissal – which is precisely what has happened in the instant case. To put it very simply, if a store owner's complaint against an employee for an occurrence of theft is dismissed, and the employee steals again after the dismissal, the store owner is not barred from taking action against the later theft. Yet this is exactly what Defendants are alleging. As demonstrated herein, they are incorrect.

Case law clearly allows Plaintiffs to return to court to seek remedies for damages based upon new actions of its Defendants. Accordingly, Defendants argument that Plaintiff's claims are barred by res judicata must fail.

**Plaintiff Did Not Release Defendants To Infringe**

With the attachment of the *confidential* settlement agreement to their Answer, Defendants have now breached each and every term of the agreement that can possibly be breached. Despite Defendants' reprove of Plaintiff for not attaching the settlement agreement to its complaint, Plaintiff had good reason not to do so – the agreement's confidentiality clause. Indeed, Plaintiff took great care to cite just enough of the agreement to meet the "short and plain statement of the facts and allegations" burden placed upon Plaintiff by Rule 8 of the Federal Rules of Civil Procedure, without breaching the nondisclosure clause. Plaintiff's intent was to make the entire agreement of record, at the appropriate time, under a motion to file under seal once the remainder of the agreement was implicated. The rules do not demand that the Defendant immediately file

the entire agreement as public record. Making a confidential agreement public record is by far the most extreme breach of confidentiality that exists. If Defendants were concerned about honoring the promises made in the agreement, they would have cited barebones amounts of the agreement to make their claims or filed the agreement under seal if they felt the court needed to review it in its entirety at this early stage. Since Defendants have actively been sending copies of the now public agreement to their contributory infringers coupled with their twisted version of its allowances trying to convince them to continue their infringement, perhaps Defendants had another motivation to file the entire agreement with this honorable court.

With the settlement agreement now publicly on record, Defendants cite two sections then go on to make much ado about what the agreement allows them to do. They conveniently ignore the agreement's terms that state what they *cannot* do. In fact, they ignore words within the very sections they cite that don't fit into their tunnel-vision view of the facts. For instance, after citing paragraph eight of the agreement entitled "FIGHT LIKE A GIRL Usage", Defendants go on and on about what they can do but completely fail to acknowledge the words that restrict that use, specifically, the words "in an ornamental and decorative fashion" and "but not as a trademark or service mark to indicate source or origin of goods". Removing these words changes the entire meaning of the paragraph, as reflected in Defendants' interpretation of it. But these words cannot be removed just because Defendants do not want them there. They are there. And they are there for a reason. They are there as a contractual promise by Defendants to not use Plaintiff's marks in the specified way. Plaintiff did not intend for Defendants to use its trademarks in any way they wish, as they allege. Defendants' complete disregard for explicit limitation and purposeful blindness to them, prove their attitude towards their promises made in the agreement..

When considering section sixteen, the Mutual Release section of the agreement, Defendants take a different approach. Instead of ignoring words, they play musical chairs with them. After their citation of the paragraph, they state "Thus, the settlement agreement releases the Galvan sisters from liability for use of designs on-line *as of* the effective date of the settlement agreement *and* all "use of the marks 'FIGHT LIKE A GIRL'…"" (emphasis added on "as of"). (Defs.' Mot. § IV, document #10) The latter part of this statement was taken out of context and then 'tacked on' to their sentence by using the word "and". This tactic produced the implication that Plaintiff released Defendants' use of the FIGHT LIKE A GIRL marks *as of* the effective date of the settlement agreement. The words "as of" imply "from here forward" - but that's not what the settlement states when referring to Defendants' use of the FIGHT LIKE A GIRL marks. One need only review the complete release – including the parts that Defendants' have chosen to ignore - to ascertain that Plaintiff made no such concession. Specifically, the paragraph relating to "use of the marks 'FIGHT LIKE A GIRL'" reads as follows:

> The parties release one another from "claims for relief of any nature, known, unknown, asserted or unasserted, *up to and including the Effective Date of this Settlement Agreement* including, but not limited to all potential claims that *might have been brought* against one another as a result of one another's……use of the marks….." (emphasis added).

The release clearly establishes that the only claims being released are those that could have been brought "up to and including the Effective Date of the Settlement Agreement" including "all potential claims that might have been brought against one another", which refers to past-tense.

Defendants continue with their word-picking by alleging that the agreement releases the Galvan sisters from liability for all claims "known, unknown, asserted or unasserted" including "claims for trademark infringement and dilution and unfair competition and claims regarding one another's use of, inter alia, FIGHT LIKE A GIRL." (Defs.' Mot. IV, document #10). As already discussed, it would be absurd for Plaintiff to release future claims for infringement, dilution, and unfair competition. The United States Supreme Court agrees. "Acceptance of the respondents' novel contention would in effect confer on them a partial immunity from civil liability for future violations. Such a result is consistent with neither the antitrust laws nor the doctrine of res judicata." *Lawlor*. Further, in a case cited by Defendants, the Sixth Circuit recognized that when an interpretation of a contract crosses the line into absurdity it should be disregarded. "When a dispute arises over the meaning of contract language, the first question to be decided is whether the language is `reasonably susceptible' to the interpretation urged by the party. If it is not, the case is over." *Commercial Money Center, Inc. v. Illinois Union Insurance Co.*, 508 F.3d 327, 335 (6th Cir. 2007) quoting *Dore v. Arnold Worldwide, Inc*., 139 P.3d 56, 60-61 (Cal. 2006).

Finally, the Sixth Circuit, in affirming a District Court's ruling, rejected a contract interpretation nearly identical to Defendants'. "The Defendants first argue that the language whereby [Plaintiff] released them from "any and all claims…of any nature whatsoever, whether or not now known" bars the Plaintiff's copyright infringement action. The District Court refused to read the general language of release as including copyright rights, stating that if it did it would find "strong evidence to point to [Defendant] having fraudulently induced the signing of the release." *Forry* at 263.

And when *Forry*'s Defendant argued against the granting of Plaintiff's Motion for Preliminary Injunction claiming res judicata based on the release clause in the parties' settlement

agreement, the court held "Moreover, even if this clause barred any claim for damages for infringement prior to the signing of the release, the injunction relates to future use of the copyright." *Forry* at 259, 267. Thus, the Sixth Circuit is clear that releasing a defendant from infringement claims through a settlement agreement does not release that defendant from future infringement.

Defendants state in their motion that the settlement agreement contains an "extremely broad mutual release". (Defs.' Mot. § IV, document #10). Again, the Defendants are quoting a section focusing only on certain words that they feel justify their actions. The mutual release pertains to the dispute at the time of the signing of the agreement, not an indefinite release to infringe at will as Defendants would have others believe.

**Defendants' Arguments Concerning Plaintiff's Exhibit L and Exhibit P are Misplaced**

Defendants' commentary on Exhibits L and P of Plaintiff's complaint raises the question of whether or not they even read the complaint. Referring to the products shown in the exhibits, they state that "each of the complained of products are expressly permitted by the settlement agreement". But these exhibits have nothing to do with the products depicted, as clearly explained in Plaintiff's complaint. Exhibit L's sole purpose was to disclose the comments of a Facebook post:

> "Characteristic of Defendants' vengeful history, *after* receiving notification from Plaintiff of their breach of the agreement, they candidly claimed ownership of the Fight Like a Girl slogan in a post to their Fight Like a Girl Facebook page stating "Looking for LOOSER fitting shirts with *our* (emphasis added) Fight Like a Girl decorative slogan?" (See Exhibit L). (Complaint § 61(f), document #1)

Defendants go on to dispute Exhibit P for the same reason. Once again, however, the products in Exhibit P have nothing to do with Exhibit P's purpose. Rather, its purpose was to support Plaintiff's claim of tarnishment of its marks on Defendants' website

12

www.fuckcancershirts.com which was registered on December 9, 2011, nine months after execution of the parties' settlement agreement:

> In addition to infringing and diluting Plaintiff's FIGHT LIKE A GIRL marks, Defendants are also tarnishing Plaintiff's marks by selling their infringing Fight Like a Girl products in the same store as they sell thousands of "Fuck Cancer" products. To taint the situation even more, Defendants use children to model some of these offensive shirts. (See Exhibit P). (Complaint § 78, document #1)

Thus, Defendants' arguments as they relate to Exhibits L and P should be disregarded as futile.

## **Copyright Infringement**

Turning to Plaintiff's claims of copyright infringement, Defendants seem to be confusing copyrights and trademarks when they make the statement:

> "Accordingly, TSDC fails to specifically allege the existence of infringing designs online after the effective date of the settlement and that do not use the term "FIGHT LIKE A GIRL." In fact, it would be impossible for TSDC to allege such a claim as its alleged trademark registrations and applications are each for "FIGHT LIKE A GIRL" variants." (Defs.' Mot. § IV, document #10).

When referring to Defendants' infringements of non-Fight Like a Girl works, Plaintiff clearly specifies that such claims are 'copyright claims' (Complaint § 65, document #1). Thus, there would not be a corresponding trademark registration or application since a trademark is not required to claim copyright infringement.

Additionally, Plaintiff, in the same paragraph and through Exhibit N, does indeed identify four separate designs that Defendants infringed upon after execution of the parties' settlement agreement as well as additional designs of which Defendants have continued to infringe upon that were on *products* that Plaintiff allowed to remain in their online stores as part of the settlement agreement.

### Plaintiff's Cease and Desist Letter

Defendants' reference to Plaintiff's counsel's letter is "more of the same". They state that this letter contained "enclosures that repeatedly refer to pre-dismissal conduct". (Defs.' Mot. III, document #10). Plaintiff reaffirms its allegations that 1. Four of the designs are indeed new designs created by Defendants after execution of the parties' settlement agreement and have nothing to do with "pre-dismissal conduct", as Defendants allege and 2. The remaining designs were on *products* that were released that incorporated those designs. Releasing those products did not give Defendants' the rights or a license to continue placing the designs on thousands of new products.

### Duress and Ambiguity

Defendants confuse in a one-page paragraph Plaintiff's duress claim and whether or not the settlement agreement is ambiguous (Defs.' Mot. § IV, document #10). Although Defendants seem to attempt to tie the two topics together, in actuality, they are unrelated matters – at least in the instant case. Therefore, Plaintiff will respond to each separately.

Defendants pretentiously state that "Neither parties' pleading alleges that the settlement agreement is ambiguous…." (Defs.' Mot. § IV, document #10) They apparently missed the section entitled "UNENFORCABLE IF DEFENDANTS' USE IS ORNAMENTAL" of Plaintiff's complaint, specifically, paragraphs 89 through 91. In this section, Plaintiff clearly explains that even if case law supported Defendants' interpretation of the settlement agreement, "Plaintiff would not have been aware of such at the time of execution of the agreement" thus the terms that allowed such use should be deemed unenforceable in the interest of public policy. A finding of this nature would be due to the ambiguity of the terms of the settlement agreement.

Defendants' arguments relating to Plaintiff's claim of duress are unpersuasive. The case they chose to support their argument addresses duress as a result of possible imprisonment although there exist numerous cases related to economic duress, which is much more akin to the type of duress we have here.

The Ohio Supreme Court has recognized that the law of duress as a reason to avoid a contract has evolved to encompass economic duress as well as physical compulsion. *Blodgett v. Blodgett*, 49 Ohio St.3d 243, 246 (Ohio 1990). The person alleging financial difficulty must allege that it was contributed to or caused by the one accused of coercion. *Id*. Furthermore, the assertion of duress must be proven to have been the result of the defendant's conduct…. *Id*.

As set forth in its complaint, Plaintiff alleges and can prove that Defendants submitted a fraudulent and baseless take-down infringement claim to Facebook to have Plaintiff's Fight Like a Girl Facebook page removed. It can prove that this Facebook page was the lifeline of the organization at the time. It can prove that Facebook would not reinstate Plaintiff's account without either a court order, which would take months and much money, or a notification from Defendants that the page could be restored. And, finally, it can prove that despite multiple requests by Plaintiff's counsel, Defendants refused to request reinstatement of Plaintiff's account until it was made part of the settlement agreement.

Plaintiff's Facebook account had been deactivated for six months by the time the parties began negotiating. It is an absolute fact that Defendants' hijacking of Plaintiff's Facebook page resulted in Plaintiff signing the agreement permitting even ornamental use of its marks.

### **Plaintiff's Dilution Claim Is Valid**

Plaintiff has pled enough facts to be entitled to proceed to discovery on its claim of dilution. "Asking for plausible grounds does not impose a probability requirement at the pleading

stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement". *Twombly* at 566. "…a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 47 (U.S. 1957). Even § V of Defendants' Motion (document #10) states that Plaintiff "nominally has claims for federal statutory dilution and state common law dilution". This statement meets Plaintiff's Rule 8 burden of a short and plain statement of its allegations.

Plaintiff's dilution claims are supported by the totality of its complaint as reflected in paragraph 108 in Count 4 (document #1), the Federal Statutory Dilution claim "Plaintiff incorporates its allegations set forth in paragraphs 1 through 107 as if fully rewritten here" and in paragraph 122 for Count 8, the State Statutory Dilution claim "Plaintiff incorporates its allegations set forth in paragraphs 1 through 121 as if fully rewritten here." It is plausible and can readily be inferred that based on the multiple organizations that comprise Fight Like a Girl, the number of years it has been active, and its extensive connection to the women's health community, it has achieved a degree of fame sufficient for Plaintiff to claim dilution. Additionally, it's not difficult to ascertain that flooding the online market (which is the same marketing channel used by Plaintiff) with one million plus products bearing Plaintiff's marks would or could dilute the distinctive quality of Plaintiff's marks.

Plaintiff's dilution claim is sufficient and raises enough facts to reasonably expect that discovery will produce the evidence necessary to prove it.

Furthermore, Plaintiff may yet uncover other causes of action during discovery that may prompt it to amend its complaint to include them. The Federal Rule of Civil Procedure 15(a)(2)

liberally authorizes that, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."

**Defendants Failed To Address Five of Plaintiff's Claims Yet Requests Full Dismissal**

Defendant's motion for a complete dismissal is incomplete for two additional reasons: 1. They failed to argue or even acknowledge five of Plaintiff's claims and 2. Public policy deems the parties' settlement agreement unenforceable.

Plaintiff pled thirteen claims in its instant lawsuit, five of which Defendants failed to address in their motion.

> Count 1 Breach of Contract
> Count 2 Federal Statutory Trademark Infringement
> Count 6 State Statutory Trademark Infringement
> Count 12 State Statutory Identity Fraud
> Count 13 State Common Law Impersonation

As discussed, a cornerstone cause of action of the instant lawsuit is Count 1, the material breach of the parties' settlement agreement. Although much of the complaint focuses on Defendants' breaches, Defendants fail to even mention the word 'breach' in their entire motion.

Defendants did not argue Plaintiff's Federal and State Statutory Trademark Infringement claims nor could they. These claims arise from registered marks, and Plaintiff did not have registered marks at the time of dismissal of the original complaint.

Finally, Plaintiff's Identity Fraud and Impersonation claims were never mentioned by Defendants in their motion although neither of these claims were present in the first complaint.

Interestingly, Defendants asked the Court to dismiss "all of Plaintiff's claims" (Defs.' Mot. § VI, document #10), although they make no mention of, much less argue against, any of these five claims.

The second reason Defendants' motion must fail lies in public interest, a topic that is thoroughly explained in Plaintiff's complaint. (Complaint § 89-91, document #1)

## **Conclusion**

Defendants' reprehensible, often illegal, behavior has gone completely unpunished for years. And when someone commits to hold them accountable, they declare they're being bullied. It is a fact that Defendants' activities are harming Plaintiff. After peeling away all of the layers of this case - the market saturation, the infringing, the mimicking – what is left are women fighting for their lives who have enough to deal with than to have to be confused when attempting to connect with a group meant to support them. Plaintiff's instances of actual confusion demonstrate that this is exactly what is happening. Defendants' conduct is hurting individuals who are already hurting enough.

For the reasons stated herein, Plaintiff requests that this Honorable Court deny Defendants' motion for judgment on the pleadings in its entirety, award for attorney's fees to respond to this action, and any other remedy the court finds necessary in the interest of justice.

Respectfully Submitted,

_____
John M. Stryker (0088821)
Stryker Law ltd
20006 Detroit Road, Suite 310
Rocky River, Ohio 44116
216-338-2295
216-777-2064 – fax
john@strykerlaw.com

**CERTIFICATE OF SERVICE**

It is hereby certified that a copy of the foregoing PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS has been delivered on this 12th day of March, 2015 by the Court's efile system to Gordon Gray to his email address registered therein.

Respectfully Submitted,

_____
John M. Stryker (0088821)
Stryker Law ltd